COCHRAN, APPELLANT, *v.* SIEGFRIED ET AL., APPELLEES.

(No. 5706—Decided November 18, 1957.)

*Mr. Willis H. Liggett,* for appellant.
*Mr. Al Frericks* and *Mr. Charles Weilbacher,* for appellees.

PETREE, P. J. This appeal is on questions of law. The assignment of error on behalf of plaintiff, appellant herein and hereinafter referred to as appellant, is as follows:

"Plaintiff-appellant for his assignment of error states that the trial court erred in directing a verdict for the defendants-appellees and in entering judgment in favor of the defendants-appellees pursuant thereto."

Defendant, Samuel C. Siegfried, appellee herein and hereinafter referred to as appellee, wrote the following letter to appellant on October 4, 1955:

"Mt. View, Cal.
Oct. 4, '55.

"Mr. E. Ray Cochran:
"Dear Sir:

"Our lease with the Ohio Paint and Color Co. at 2594 Cleveland Ave. is terminated and as we are willing to rerent to Mr. Holder we would like to have you engineer the deal for us.

"On Nov. 23, '54, I sent the following telegram to Mr. Howard Holder after he had phoned and requested the information when he was making a deal to buy out his partner.

"(Howard Holder: Agree to lease property until 1960. Also agree to purchase option, renewable yearly with price agreed upon at times of renewal.)

"The whole property rented for $300. monthly and as I am not informed to rental of Columbus property would like you to negotiate a lease favorable to both Mr. Holder and me.

"Since we have recently sold our home and some investment property here we are not very keen about selling the Columbus property and if a lease is not negotiated with Mr. Hold-

er we might consider building more store rentals, if you would advise it. If a purchase option is written into a lease we would want it to be plenty high.

"Yours Very Truly
"S. C. Siegfried
4050 Grant Rd.
Mt. View, Calif."

Considerable correspondence intervened between the date of that letter and November 15, 1955, as shown by the exhibits in the record.

Appellant contends that he is entitled to be paid on a *quantum meruit* basis for services rendered to appellee and that the jury should have been permitted to determine from the evidence whether there was an employment contract and, if so, to determine the amount to which the appellant was entitled for his services. The testimony as well as the exhibits in this record indicate that there was considerable work performed by appellant, Cochran; that he was prepared to close the transaction between the appellee and Mr. Holder, the tenant, for the rental of the premises, at $300 per month for five years beginning December 5, 1955, upon the terms and conditions of the lease which existed at the time of the negotiation and with the option-to-purchase clause during the five years at $38,000; and that at about the time the transaction was to be closed, appellee forwarded a letter in which he notified appellant that he was withdrawing his listing.

In view of all the testimony, including that which is referred to above, it is the opinion of this court that appellant was entitled to have his case submitted to a jury for determination of the question of a contract on a *quantum meruit* basis; and if the jury found that there was an employment contract, then the jury should have been permitted to determine the amount to which appellant was entitled.

It appears from the record that the appellee sold his property for $38,000 to Howard Holder, with whom the appellant was negotiating, and that prior thereto, he had executed a lease at $300 a month. From the record it appears that the agreement for a lease was made over the telephone on December 3, 1955, within about two weeks after the attempt by Mr. Cochran

to close the deal on the same basis. The deed came at a subsequent time, but the sale price of $38,000 agreed with the option price as shown in Cochran's proposal, and the sale was during the lease period, to wit, about one year after the lease.

On such a question we find the following in 8 American Jurisprudence, 1008, note 19:

"If, in such a case, the agency is terminated on the very eve of its successful culmination, the time of the revocation is a strong indication of bad faith on the part of the employer, and unless such inference is rebutted by other evidence the employer will be held liable. *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y., 378 * * *."

On the same subject, 8 Ohio Jurisprudence (2d), 88, Section 15, contains the following language:

"* * * But if the broker is employed under a unilateral contract, the contract between the parties becomes bilateral upon the performance of such services, and there is also authority to the effect that such a contract becomes binding when the broker enters upon the performance of the contract and thus furnishes the consideration."

In support of this, *Stoffregen* v. *Roney*, 15 Ohio Law Abs., 118, is cited.

For the reasons hereinbefore stated, the assignment of error is well taken, and the judgment of the Common Pleas Court is, therefore, reversed and the cause remanded for further proceedings in accordance with this opinion.

*Judgment reversed.*

BRYANT and MILLER, JJ., concur.